# EXHIBIT

**RECEIVED**

JAN 0 1 2025

Clerk, U.S. District Court
Juneau, AK

# JJ



**Rushmore Servicing™**
P.O. Box 619098
Dallas, TX 75261

**OUR INFO**
**ONLINE**
www.rushmoreservicing.com

Timothy Bradley
9010 Gee Street
Juneau, AK 99801

April 10, 2024

**YOUR INFO**
LOAN NUMBER:
0709168827

CASE NUMBER:
0009045872

PROPERTY ADDRESS:
9010 GEE STREET
Juneau, AK 99801

MORTGAGOR NAME:
Timothy Bradley

Dear Timothy Bradley:

We received your letter on April 2, 2024, and we are sharing with you what we found after an investigation into your concerns.

Some of the information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside the scope of information that must be provided. However, the information below and enclosed documents should address any of your relevant questions and requests. Enclosed, you will find the following documents:

- Note and Security Instrument

    o The Note and Security Instrument will validate the above-mentioned loan. These documents will explain our rights to:

        ▪ Collect any remaining debt owed under the Note and Security Instrument

        ▪ Assess fees and costs to the loan as necessary, including late fees if a payment is received after the specified grace period and legal fees if a loan is in default.

Rushmore Servicing℠ and Mr. Cooper® are brand names for Nationstar Mortgage LLC.

**Nationstar Mortgage LLC d/b/a Rushmore Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.**

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.





- Inspect the property and charge applicable fees

- Purchase lender placed insurance

- Pay taxes on the mortgagor's behalf

- Final Modification Documents

  o The final, signed modification agreement reflecting the Unpaid Principal Balance.

- Transaction History

  o The transaction history reflects a complete history for the period we have serviced the loan. Late fees are assessed any time the contractual payment is received after the grace period, as indicated in the Note. Please note, late fees are not considered interest and are not reported to the IRS on IRS form 1098. If a payment was applied to the suspense account, it will be indicated in the code description column. Payments can be applied to the suspense account if the funds received do not represent the full monthly mortgage payment due or if we are not informed of where the payment is to be applied. Furthermore, this payment history reflects:

    - When payments were received

    - How the payments were applied to the loan

    - Any disbursements made from the loan, including, but not limited to, disbursements for taxes, insurance, property inspections, brokers price opinions (BPOs), and legal fees.

    - A description for each transaction, with running balances of the unpaid principal and escrow accounts

    - The date fees and charges were assessed if any

    - Any amounts paid towards fees

    - Any waivers/reversals of fees

- Most Recent Billing Statement

  o The billing statement will reflect the current amount due on the loan and will also provide a breakdown of any fees assessed, including any lender paid expenses or corporate advance fees.

- Notice of Servicing Transfer, also known as Welcome Letter

Rushmore Servicing™ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.





- The Servicing Transfer Notice will detail the date and terms of the service transfer from the prior servicer to Mr. Cooper. This document evidences our rights to service the loan.

- **Most Recent Escrow Analysis Statement**

  - The Escrow Analysis will provide a detailed description of all disbursements made from the escrow account as well as any payments towards the escrow account for the prior year. It will also provide a breakdown of how the current escrow payment has been calculated, including any shortages that may exist.

- **Origination Documents**

  - TILA Disclosures (particularly if the borrower requests for "disclosures at origination").
  - HUD-1
  - Loan Applications

- **MERS**

  - Your correspondence mentioned the Mortgage Electronic Registration System ("MERS"). As you can confirm by your executed Note and Mortgage, at origination of the loan you agreed to designate MERS as a nominee on the loan. Please be advised that MERS did not have any servicing duties towards this loan, but only acted in its function as nominee. In that function, the duties of MERS included tracking ownership and servicing rights to the loan. MERS did not affect validity, ownership of the loan, or standing of a servicer to foreclose, but merely tracked its ownership. Moreover, any assignments issued by MERS remain valid. Please refer to the assignments attached to review MERS transactions on this loan.

- **Location of the Collateral File**

  - Please be advised that we have researched your request with the Collateral file team and can confirm that we have the collateral file, which includes the wet-ink signature Note for this account.

Furthermore, our records indicate J.P. Morgan Mortgage Acquisition Corp., is the current owner of the Note. As requested, we have provided the address and phone number below:

J.P. Morgan Mortgage Acquisition Corp
383 Madison Avenue
New York, NY 10179

Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.





Please note that we, Rushmore Servicing, are the servicer of the loan and will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include but are not limited to the following:

- Payment assistance and modifications
- Payment posting
- Validation of the debt
- Foreclosure proceedings
- Payment adjustments

Please direct any communication related to these matters to us using the contact information below. J.P. Morgan Mortgage Acquisition Corp will not be able to assist with any of these matters.

Upon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriate to its status.

Furthermore, the payment history appears to be reported accurately to the main credit repositories. If you have documentation that substantiates that any of the information reported by us on the credit report is incorrect, please provide the detailed information for review.

If you have any questions, your Dedicated Loan Specialist is Kerry-Ann Lynch and can be reached at 877.888.4623 or via mail Lake Vista 4, 800 State Highway 121 Bypass, Lewisville, TX 75067. Our hours of operation are Monday through Friday from 7 a.m. to 8 p.m. (CT). Visit us on the web at www.rushmoreservicing.com for more information.

I hope this information is helpful and addresses your concerns. If you have any specific questions about the information I have provided, please contact me directly, using the information below.

Sincerely,

Jorge Mortero
Customer Relations Specialist
Rushmore Servicing
PO Box 619098
Dallas, TX 75261

Phone: 972.894.1569

Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.





E-mail: Jorge.Mortero@mrcooper.com

Enclosure
By U.S. Standard Mail and E-mail WOODWORKALASKA@GMAIL.COM

Are you experiencing a financial hardship? Our local non-profit partners can help with financial counseling and other services. Please visit these websites for assistance:

- Hud.gov
- Neighborworks.org

Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.



 **Gmail**

Woodchuck Alaska <woodworkalaska@gmail.com>

## Resolution

**Woodchuck Alaska** <woodworkalaska@gmail.com>
To: Jorge Mortero <jorge.mortero@mrcooper.com>

Thu, Apr 11, 2024 at 4:24 PM

Hello Mr. Mortero , thank you for the information you provided, this is all the information I've already received and does not address the concerns I had in my email to Rushmore dated April 2nd.
Your resolution letter States " Some of the information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside the scope of information that must be provided".

All The concerns I brought up in my April 2nd letter pertain directly to the servicing of the loan, and the proper assignment of the rights to service my loan. None of the information that you have provided here shows any information to invalidate the concerns I have. Leaving me to wonder how much of an investigation could have been done. All my concerns pertain directly to the servicing of the loan and specify specific servicing errors.

 I did not request any proprietary information or any information that would be considered confidential. My concerns are about public documents on record. Concerns of assignments of the deed of trust by an individual who was acting in a capacity of authority or of an executive position that the individual did not have or hold. Do these concerns not pertain directly to the servicing of the loan and identify specific servicing errors?

You have not addressed my concern about the wet ink signature note I signed at the inception of the loan, I have asked for a certified copy and you have sent me the same one that was sent to me last year neither one of them is certified just copies of a note that Rushmore claims is the original wet ink note, signed by myself in 2005. If that is the case why hasn't a certified copy been provided as per two different requests? Do these concerns not pertain directly to the servicing of the loan and identify specific servicing errors?

You have not addressed my concerns concerning the loan modification of my loan dated October 5th, 2020 with New Residential Mortgage who at the time had not been assigned the deed that was being modified. As well as my concerns about my signature and the notarization on the acknowledgment page of the modification. Do these concerns not pertain directly to the servicing of the loan and specific servicing errors?

You have not addressed my concerns about my loan being shown as inactive on the mortgage electronic registration systems website showing LoanCare as the servicer and Fannie Mae as the investor with MERS being the go-to for all information on the assignment of mortgages and deeds of trust. My concern is that my loan on the MERS site, MERS as the nominee, I am being advised that MERS has the duties of tracking ownership and servicing rights to the loan. Why is it inactive on the MERS site?

Your resolution letter states " As you can confirm by your executed Note and Mortgage, at the origination of the loan you agreed to designate MERS as a nominee on the loan. Please be advised that MERS did not have any servicing duties towards this loan, but only acted in its function as nominee. In that function, the duties of MERS included tracking ownership and servicing rights to the loan. MERS did not affect the validity, ownership of the loan, or standing of a servicer to foreclose, but merely tracked its ownership. Moreover, any assignments issued by MERS remain valid. Please refer to the assignments attached to review MERS transactions on this loan."

There are no attached assignments with the last email. You may say or state that MERS assignments remain valid, others and I would beg to differ. Your above statement concerning MERS and the tracking of ownership and servicing rights to my loan. Tracking ownership and servicing rights is far different than having valid Authority of assignment without having any interest in the deed or the note and this validates some of my concerns as this loan in question on the MERS website shows the loan as inactive the servicer as Loan care and the investor is Fannie Mae, there is no other tracking of ownership and servicing rights to the loan on the site. There are only recorded assignments in the local recorder office. My concern is about the individual assigning on behalf of others as to whether having any authority or authorization in one or more of the recorded assignments in the first place, as of my agreeing to designate MERS as nominee on the loan. As a nominee they hold no interest in either the note or the deed as you stated,  MERS duties include tracking ownership and servicing rights to my loan, having no beneficial interest in either the note or the deed. Moreover raising a concern about any validity of having rights to assign, per federal and state laws of 2005 at the Inception of the loan. Don't these concerns pertain to the servicing of my loan and identify possible specific servicing errors?

You have not addressed my concerns about the assignment of my mortgage and an individual notarizing the assignments with a signature that cannot be found on any other public documents notarized by that individual. Don't these concerns pertain directly to the servicing of the loan and identify specific servicing errors?

You have not addressed my concerns about the proper endorsement of my promissory note, The claimed original note that you have provided a copy of having a special endorsement to Flagstar Bank with an attached allonge, with no date or reference to the original lender, original borrower, original amount of the loan, only, another endorsement to Flagstar Bank without recourse. There are no other endorsements found on the claimed to be an original note or the attached allonge. Don't these concerns pertain directly to the servicing of the loan and identify specific servicing errors?

You have not addressed my concerns about the note that I have a copy of, the original note I signed back in 2005. The discrepancies between the note you have provided and the one that I've had for almost 20 years have some differences in markings and the affixation to other documents. Don't these concerns pertain directly to the servicing of the loan and identify specific servicing errors?

Mr. Mortero, I do not know the capacity under which you perform for Rushmore servicing / Mr. Cooper / Nationstar, or whoever it is. it is neither here nor there. What I do know is from the Inception of my loan in 2005, it was a time when the mortgage industry was known for its many deceptive practices of fraud, robo-signing, improper assignments, destruction of original notes, and many other undisclosed questionable practices all of it bringing rise to the many new laws, statutes, and regulations surrounding, banking, mortgages, lending, and mortgage servicing on both the Federal and State levels. Many purported to be for the benefit of the consumer, but I beg to differ, after my thorough investigation of the things surrounding my mortgage deed and promissory note, I believe that in the end, most of it favored the persons and entities that created the situation in the first place. A simple Google search will show much of it still goes on today.

All that being said, I ask you to reinvestigate or get to another department within your company and address these concerns that very much have to do with the servicing of my loan as well as specific servicing errors that have effects on my loan. I would rather a solution out of the courts found, but to protect my almost 20 years of equity interest in my home, I am prepared to present all my indisputable recorded documentation of the many questionable-unlawful actions surrounding my loan all of which the Alaska court will find to be favorable upon me and my stated claims of undeniable recorded facts. Notice to the agent is notice to the principal, and notice to the principal is a notice to the agent.

I implore you to reach out to the lender with my concerns, reevaluate my loan and the recent modification offered, return to the table with some very reasonable terms around the mortgage, and note to keep from burdening a system that frowns upon its time being taken up by persons that make claims of standing without the correctly recorded documentation consisting of proper assignments issued by individuals with the authority to assign, and based on the laws of contract, banking, Lending, mortgages, promissory notes, mortgage servicing, the UCC, and others of the time of its inception.

Sincerely

Timothy-Leo: Bradley  beneficiary
9010 Gee Street
Juneau, Alaska

Below, for your review and to be considered, along with the attachment or case text of cases that runs parallel to the situation at hand

while the assignment of a promissory note also effectuates assignments of the mortgage the converse is not true since a mortgage is merely security for a debt it cannot exist independently of the debt and thus a transfer or assignment of only the mortgage without the debt is a nullity and no interest is acquired by it (see Deutsche Bank National Trust Company vs. Barnett 88 ad 3D 636 Bank of New York vs Silverberg 86 ad 3D at 280,)

**Alaska Statute 09.10.230 provides:**

In an action upon a new promise, fraud, or mistake, the running of the time within which an action may be commenced starts from the making of the new promise or the discovery of the fraud or mistake. This section does not bar an equitable owner in possession of real property from defending possession by means of the equitable title. The right of an equitable owner to defend possession in an action or by complaint for injunction is not barred by lapse of time while an action for the possession of the real property is not barred by the provisions of this chapter.

The law of fraud has changed in the last one hundred years. Today, under Alaska law, a victim's negligence in trusting a misrepresentation will not deprive the victim of his remedy. We do not feel compelled to adopt an interpretation espoused in an 1887 Oregon case decided when such negligence was a defense.

The growing trend and tendency of the courts will continue to move toward the

doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud or deprive the defrauded person of his remedy.

**Alaska Statutes Title 6. Banks and Financial Institutions § 06.60.905.
Untrue, misleading, or false statements**

A person may not, in a document filed with the department or in an examination, an investigation, a hearing, or another proceeding under this chapter, make or cause to be made an untrue statement of a material fact, or omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading or false.

**Alaska Unfair Trade Practices and Consumer Protection Act.**

Causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services

§ 09.70.030. Good faith
The parties to every contract have a duty to act fairly and in good faith in the performance and enforcement of the contract.

Title 40. Public Records and Recorders § 40.17.090. Conveyances and recorded documents as evidence
40.17.090. Conveyances and recorded documents as evidence
(b) An acknowledged and recorded signed document relating to title to real property creates presumptions with respect to title that
(1) the document is genuine and was executed as the voluntary act of the person purporting to execute it;

(2) the person executing the document and the person on whose behalf it is executed are the persons they are purported to be and the person executing it was neither incompetent nor a minor at any relevant time;

(3) delivery of the document occurred notwithstanding a lapse of time between dates on the document and the date of recording;

(5) the grantee, transferee, or beneficiary of an interest created or claimed by the document acted in good faith at all relevant times up to and including the time of the recording;

(6) a person purporting to act as an agent, attorney-in-fact under a recorded power of attorney or authority, officer of an organization, or in a fiduciary or official capacity, held the position the person purported to hold, acted within the scope of the person's authority, and in the case of an organization, the authorization satisfied all requirements of law; and in the case of an agent, acted for a principal who was neither incompetent nor a minor at any relevant time and who had not revoked the agency;

**AS 36.30.687. Misrepresentations, Fraud, and Attempted Fraud.**
(a) A person who makes or uses in support of a contract claim under this chapter, a misrepresentation, or who practices or attempts to practice a fraud, at any stage of proceedings relating to a procurement or contract claim under this chapter

(1) forfeits all claims relating to that procurement or contract; and

(2) is liable to the state for reimbursement of all sums paid on the claim, for all costs attributable to review of the claim, and for a civil penalty equal to the amount by which the claim is misrepresented.

(b) The procurement officer, commissioner or court shall make specific findings of misrepresentation, attempted fraud, or fraud before declaring a forfeiture under (a)(1) of this section.

(c) Suits to recover costs and penalties under (a)(2) of this section must be commenced within six years after the discovery of the misrepresentation, fraud, or attempted fraud.

(d) A person who in a matter relating to a procurement or a contract claim under this chapter makes a misrepresentation to the state through a trick, scheme, or device is guilty of a class C felony.

(e) In this section, "misrepresentation" means a false or misleading statement of material fact, or conduct intended to deceive or mislead concerning material fact. whether it succeeds in deceiving or misleading.

**Alaska Statutes Title 44. State Government § 44.50.165. Validity of notarial acts**

The failure of a notarial officer to perform a duty or meet a requirement specified in this chapter does not invalidate a notarial act performed by the notarial officer. The validity of a notarial act under this chapter does not prevent an aggrieved person from seeking to invalidate the record or transaction that is the subject of the notarial act or from seeking other remedies based on a law of this state other than this chapter or a law of

the United States. This section does not validate a purported notarial act performed by an individual who does not have the authority to perform a notarial act.

[Quoted text hidden]

Dismissed-Cases.pdf
480K

# NOTE

V2 WBCD LOAN # 500820108
MIN: 100052550082010884

AUGUST 23, 2005
[Date]

Juneau,
[City]

ALASKA
[State]

9010 GEE STREET, Juneau, AK 99801
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $181,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UNITED MORTGAGE CORPORATION OF AMERICA, A WASHINGTON CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.625%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1ST day of each month beginning on OCTOBER 1, 2005.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 328 N OLYMPIC AVE
ARLINGTON, WA 98223

or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $1,158.96.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Initials: _____

ALASKA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3202 1/01
© 1999-2002 Online Documents, Inc.       Page 1 of 2              F3200AKN 0212
08-23-2005 12:21

500820108
9010 Gee Street Juneau AK 99801

Case 1:24-cv-00017-SLG   Document 37-1   Filed 01/02/25   Page 11 of 28

V2 WBCD LOAN # 500820108

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## NOTICE OF OTHER REMEDIES

To the extent set forth in this Note and any Rider attached hereto (a) the mortgagor or trustor ("Borrower") is personally obligated and fully liable for all amounts due under this Note, and (b) the holder hereof has the right to sue on this Note and obtain a personal judgment against the Borrower for satisfaction of all amounts due under this Note either before or after a judicial foreclosure, under Alaska Statutes §§ 09.45.170 through 09.45.220, of the deed of trust which secured this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
TIMOTHY L. BRADLEY

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

UNITED MORTGAGE CORPORATION
OF AMERICA
BY:
PRINTED NAME: April Miller
ITS: Secretary

[Sign Original Only]

ALASKA FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3202 1/01
© 1999-2002 Online Documents, Inc.    Page 2 of 2    F3200AKN
08-23-2005 12:21

500820108

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: _____
JEAN R. GARDNER, SENIOR VICE PRESIDENT

BY: _____
JOHN P. HALECKI, FIRST VICE PRESIDENT

Apr 10, 2024  12:20 PM



rview.

**Associate, Customer Relations**

ents may contain confidential, copyrighted, and legally privileged information for use solely by the designated recipients to which this e-mail is addressed. If you are not the intended recipient, you are hereby notified that you have received this disclosure, dissemination, distribution, or copying of this message or its contents is prohibited and may be subject to governing laws protecting its disclosure. If you have received this communication in error, please notify Mr. Cooper immediately by stroy all copies of this communication and any attachments.

...ation.pdf   EA.pdf   HUD-1.pdf   MLS.pdf   Mod Agreement....   Mortgage.pdf   Note.pdf

...me Letter.p...

odwork.alaska    ACFrOgABDfVxriaxjoJ5uiCrn...    +

m&ogbl#search:/jorge+ mortero/FMfcgzGxSbvNwslSngCnGjNhVMMzZmhV

slots    discharge    TRADING SHIT    bank    adead    907CHIPREPAIR    UNITED MORTGAGE    court link:    shopping    hooton insurance    Online PDF Editor, F...    EX-FACTORY    >>    All Bookmarks

9 of 10    <    >



HUB....pdf    MLS.pdf    Mod Agreement...    Mortgage.pdf    Note.pdf

...ome Letter.p...

Apr 11 2024, 4:24 PM

...ion you provided, this is all the information I've already received and does not address the concerns I had in my email to Rushmore dated April 2nd

...formation you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside the scope of

...l letter pertain directly to the servicing of the loan, and the proper assignment of the rights to service my loan. None of the information that you have provided here shows any information to invalidate the concerns I have. Leaving me to wonder how ...e. All my concerns pertain directly to the servicing of the loan and specify specific servicing errors.

...or any information that would be considered confidential. My concerns are about public documents on record. Concerns of assignments of the deed of trust by an individual who was acting in a capacity of authority or of an executive position that the ...erns not pertain directly to the servicing of the loan and identify specific servicing errors?

...e wet ink signature note I signed at the inception of the loan, I have asked for a certified copy and you have sent me the same one that was sent to me last year neither one of them is certified just copies of a note that Rushmore claims is the ...5. If that is the case why hasn't a certified copy been provided as per two different requests? Do these concerns not pertain directly to the servicing of the loan and identify specific servicing errors?

...rning the loan modification of my loan dated October 5th, 2020 with New Residential Mortgage who at the time had not been assigned the deed that was being modified. As well as my concerns about my signature and the notarization on the ...these concerns not pertain directly to the servicing of the loan and specific servicing errors?

...my loan being shown as inactive on the mortgage electronic registration systems website showing LoanCare as the servicer and Fannie Mae as the investor with MERS being the go-to for all information on the assignment of mortgages and deeds of ...RS site, MERS as the nominee, I am being advised that MERS has the duties of tracking ownership and servicing rights to the loan. Why is it inactive on the MERS site?

...firm by your executed Note and Mortgage, at the origination of the loan you agreed to designate MERS as a nominee on the loan. Please be advised that MERS did not have any servicing duties towards this loan, but only acted in its function as ...i included tracking ownership and servicing rights on the loan. MERS did not affect the validity, ownership of the loan, or standing of a servicer to foreclose, but merely tracked its ownership. Moreover, any assignments issued by MERS remain valid ...eview MERS transactions on this loan."

...v:gid=msg-f:179598040251648597830th=1...



**Rushmore Servicing™**  P.O. Box 619098  Dallas, TX 75261

**OUR INFO**
**ONLINE**
www.rushmoreservicing.com

Timothy Bradley
9010 Gee Street
Juneau, AK 99801

June 27, 2024

**YOUR INFO**
LOAN NUMBER:
0709168827

CASE NUMBER:
0009420994

PROPERTY ADDRESS:
9010 GEE STREET
Juneau, AK 99801

MORTGAGOR NAME:
Timothy Bradley

Dear Timothy Bradley:

We received your letter on May 16, 2024, and we are sharing with you what we found after an investigation into your concerns.

We regret to inform you that we were unable to locate the email dated April 11, 2024, which contained your response to our Resolution Letter dated April 10, 2024.

We would like to confirm that the copies of the Note that we have previously provided are true certified copies. You have indicated discrepancies between these copies and the original note you possess, yet specific details of these discrepancies were not provided in your correspondence. To assist us in further investigating this matter, we kindly request that you provide evidence of the alleged alterations to the terms of the original Note.

As outlined in the Deed of Trust, specifically under Section 20, the Note, or a partial interest in the Note, may be sold one or more times without prior notification to the borrower. Such transactions may result in a change of the Loan Servicer, who is responsible for collecting payments and performing other servicing obligations, including the authority to commence foreclosure proceedings under the Note and Security Instrument.

Rushmore Servicing™ and Mr. Cooper® are brand names for Nationstar Mortgage LLC.

**Nationstar Mortgage LLC d/b/a Rushmore Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.**

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.





Regarding your concerns about Mortgage Assignments and the Mortgage Electronic Registration Systems (MERS), please be advised that once foreclosure action has commenced, the loan status in MERS becomes inactive.

In relation to the loan modification completed with Loan Care, it was a Capitalize and Extend Modification. The new principal balance was adjusted to $121,533.31, with the interest rate maintained at 5.625%, and the maturity date extended to August 1, 2060. This modification facilitated the reinstatement of the loan, making it due for the monthly contractual payment starting September 1, 2020.

Upon reviewing the loan modification agreement, we identified the discrepancy you mentioned regarding your name appearing in place of the notary's name. The notary block is otherwise valid and simply confusion on the notary's end when filling out this section. This has been raised to our foreclosure counsel to determine if any corrective action needs to be taken.

You were previously offered a six-month Trial Payment Plan (TPP), scheduled from May 1, 2024, to October 1, 2024. Unfortunately, as we did not receive the first payment by May 31, 2024, we have had to withdraw the TPP. Enclosed are copies of the TPP and the withdrawal notice for your records. Please note that you are welcome to re-apply for assistance using the enclosed Uniform Borrower Assistance Form (UBAF).

Please send the UBAF and supporting income documents to:

Rushmore Servicing
Attn: Modification Department
PO Box 619097
Dallas, TX 75261
Fax: 469-464-0308
E-mail: modification.assistance@rushmoreservicing.com

Upon receipt of this correspondence, the above-mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above-mentioned loan account will continue to be serviced appropriate to its status.

As of now, the loan is due for the monthly contractual payment of October 1, 2022, along with subsequent payments, including any fees and charges that have been assessed to the loan. Please be advised that the loan was referred to foreclosure on June 24, 2023. Furthermore, a foreclosure sale has been scheduled for September 5, 2024.

We recognize that this information may not align with your desired outcome, and we extend our sincerest empathy during this challenging time. We hope that this clarification assists you in understanding the current situation and your options moving forward.

Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.



 **Rushmore**
**Servicing**™

| RESPA RESPONSE TO NOTICE OF ERROR |
|---|
| Under applicable federal law, we are required to inform you that after completing a reasonable investigation into the issues described above, it has been determined that no error occurred. You have the right to access the documents we used in this investigation, and we have enclosed them. Those documents are:<br>• Note<br>• Deed of Trust<br>• TPP<br>• Withdrawal/Denial Notice<br>• Notice of Sale |

If you have any questions, your Dedicated Loan Specialist is Kerry-Ann Lynch and can be reached at 877.888.4623 or via mail Lake Vista 4, 800 State Highway 121 Bypass, Lewisville, TX 75067. Our hours of operation are Monday through Friday from 7 a.m. to 8 p.m. (CT). Visit us on the web at www.rushmoreservicing.com for more information.

I hope this information is helpful and addresses your concerns. If you have any specific questions about the information I have provided, please contact me directly, using the information below.

Sincerely,

Jorge Mortero
Customer Relations Specialist
Rushmore Servicing
PO Box 619098
Dallas, TX 75261

Phone: 972.894.1569
E-mail: Jorge.Mortero@mrcooper.com

Enclosures 5
By E-mail WOODWORKALASKA@GMAIL.COM

Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.





**Rushmore Servicing™**

---

Are you experiencing a financial hardship? Our local non-profit partners can help with financial counseling and other services. Please visit these websites for assistance:

- Hud.gov
- Neighborworks.org

Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.



# NOTE



**emBT_D_20200407_113399075.pdf**

| | |
|---|---|
| Account Number | 1853-621159 |
| Pool Number | 322041016 |
| Investor Type | FNMA |

## COLLATERAL

| | |
|---|---|
| Loan Number | 50107234 |
| Borrower Name | BRADLEY |
| Borrower Address | 9010 GEE ST JUNEAU AK 99801 |
| Collateral Barcode | 36161266 |
| Collateral Location | W076D6 |
| Collateral SAK | 56565079 |



| | |
|---|---|
| Control Number | 0014270 |
| Group Number | NRCITI |



## DOCUMENT

| | |
|---|---|
| Document SAK | 113399075 |
| Document Code | NOTE |
| Doc Type Descript | NOTE- NOTE |
| Doc Notation | |

# NOTE

V2 WBCD LOAN # 500820108
MIN: 10005255008201084

AUGUST 23, 2005
[Date]

Juneau,
[City]

ALASKA
[State]

9010 GEE STREET, Juneau, AK 99801
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $181,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is UNITED MORTGAGE CORPORATION OF AMERICA, A WASHINGTON CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.625%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on OCTOBER 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 328 N OLYMPIC AVE ARLINGTON, WA 98223

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,158.96.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Initials: 

ALASKA FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3202 1/01
© 1999-2002 Online Documents, Inc.    Page 1 of 2    F3200AKN 0212
08-23-2005 12:21

500820108

V2 WBCD LOAN # 500820108

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### NOTICE OF OTHER REMEDIES

To the extent set forth in this Note and any Rider attached hereto (a) the mortgagor or trustor ("Borrower") is personally obligated and fully liable for all amounts due under this Note, and (b) the holder hereof has the right to sue on this Note and obtain a personal judgment against the Borrower for satisfaction of all amounts due under this Note either before or after a judicial foreclosure, under Alaska Statutes §§ 09.45.170 through 09.45.220, of the deed of trust which secured this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
TIMOTHY L. BRADLEY

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

UNITED MORTGAGE CORPORATION
OF AMERICA
BY: _____
PRINTED NAME: April Miller
ITS: Secretary

[Sign Original Only]

ALASKA FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3202 1/01
© 1999-2002 Online Documents, Inc.                Page 2 of 2                                        F3200AKN

08-23-2005 12:21

500820108

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: _____
JEAN R. GARRICH, SENIOR VICE PRESIDENT

BY: _____
JOHN P. U. HECKL, FIRST VICE PRESIDENT


## Resolution

**Woodchuck Alaska** <woodworkalaska@gmail.com>                              Thu, Apr 11, 2024 at 4:24 PM
To: Jorge Mortero <jorge.mortero@mrcooper.com>

Hello Mr. Mortero , thank you for the information you provided, this is all the information I've already received and does not address the concerns I had in my email to Rushmore dated April 2nd.
Your resolution letter States " Some of the information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside the scope of information that must be provided".

All The concerns I brought up in my April 2nd letter pertain directly to the servicing of the loan, and the proper assignment of the rights to service my loan. None of the information that you have provided here shows any information to invalidate the concerns I have. Leaving me to wonder how much of an investigation could have been done. All my concerns pertain directly to the servicing of the loan and specify specific servicing errors.

 I did not request any proprietary information or any information that would be considered confidential. My concerns are about public documents on record. Concerns of assignments of the deed of trust by an individual who was acting in a capacity of authority or of an executive position that the individual did not have or hold. Do these concerns not pertain directly to the servicing of the loan and identify specific servicing errors?

You have not addressed my concern about the wet ink signature note I signed at the Inception of the loan, I have asked for a certified copy and you have sent me the same one that was sent to me last year neither one of them is certified just copies of a note that Rushmore claims is the original wet ink note, signed by myself in 2005. If that is the case why hasn't a certified copy been provided as per two different requests? Do these concerns not pertain directly to the servicing of the loan and identify specific servicing errors?

You have not addressed my concerns concerning the loan modification of my loan dated October 5th, 2020 with New Residential Mortgage who at the time had not been assigned the deed that was being modified. As well as my concerns about my signature and the notarization on the acknowledgment page of the modification. Do these concerns not pertain directly to the servicing of the loan and specific servicing errors?

You have not addressed my concerns about my loan being shown as inactive on the mortgage electronic registration systems website showing LoanCare as the servicer and Fannie Mae as the investor with MERS being the go-to for all information on the assignment of mortgages and deeds of trust. My concern is that my loan on the MERS site, MERS as the nominee,  I am being advised that MERS has the duties of tracking ownership and servicing rights to the loan. Why is it inactive on the MERS site?

Your resolution letter states " As you can confirm by your executed Note and Mortgage, at the origination of the loan you agreed to designate MERS as a nominee on the loan. Please be advised that MERS did not have any servicing duties towards this loan, but only acted in its function as nominee. In that function, the duties of MERS included tracking ownership and servicing rights to the loan. MERS did not affect the validity, ownership of the loan, or standing of a servicer to foreclose, but merely tracked its ownership. Moreover, any assignments issued by MERS remain valid. Please refer to the assignments attached to review MERS transactions on this loan."

There are no attached assignments with the last email. You may say or state that MERS assignments remain valid, others and I would beg to differ. Your above statement concerning MERS and the tracking of ownership and servicing rights to my loan. Tracking ownership and servicing rights is far different than having valid Authority of assignment without having any interest in the deed or the note and this validates some of my concerns as this loan in question on the MERS website shows the loan as inactive the servicer as Loan care and the investor is Fannie Mae, there is no other tracking of ownership and servicing rights to the loan on the site. There are only recorded assignments in the local recorder office. My concern is about the individual assigning on behalf of others as to whether having any authority or authorization in one or more of the recorded assignments in the first place,  as of my agreeing to designate MERS as nominee on the loan. As a nominee they hold no interest in either the note or the deed as you stated,  MERS duties include tracking ownership and servicing rights to my loan, having no beneficial interest in either the note or the deed. Moreover raising a concern about any validity of having rights to assign, per federal and state laws of 2005 at the Inception of the loan. Don't these concerns pertain to the servicing of my loan and identify possible specific servicing errors?

You have not addressed my concerns about the assignment of my mortgage and an individual notarizing the assignments with a signature that cannot be found on any other public documents notarized by that individual. Don't these concerns pertain directly to the servicing of the loan and identify specific servicing errors?

You have not addressed my concerns about the proper endorsement of my promissory note, The claimed original note that you have provided a copy of having a special endorsement to Flagstar Bank with an attached allonge, with no date or reference to the original lender, original borrower, original amount of the loan, only, another endorsement to Flagstar Bank without recourse. There are no other endorsements found on the claimed to be an original note or the attached allonge. Don't these concerns pertain directly to the servicing of the loan and identify specific servicing errors?

You have not addressed my concerns about the note that I have a copy of, the original note I signed back in 2005. The discrepancies between the note you have provided and the one that I've had for almost 20 years have some differences in markings and the affixation to other documents. Don't these concerns pertain directly to the servicing of the loan and identify specific servicing errors?

Mr. Mortero, I do not know the capacity under which you perform for Rushmore servicing / Mr. Cooper / Nationstar, or whoever it is. it is neither here nor there. What I do know is from the Inception of my loan in 2005, it was a time when the mortgage industry was known for its many deceptive practices of fraud, robo-signing, improper assignments, destruction of original notes, and many other undisclosed questionable practices all of it bringing rise to the many new laws, statutes, and regulations surrounding, banking, mortgages, lending, and mortgage servicing on both the Federal and State levels. Many purported to be for the benefit of the consumer, but I beg to differ, after my thorough investigation of the things surrounding my mortgage deed and promissory note, I believe that in the end, most of it favored the persons and entities that created the situation in the first place. A simple Google search will show much of it still goes on today.

All that being said, I ask you to reinvestigate or get to another department within your company and address these concerns that very much have to do with the servicing of my loan as well as specific servicing errors that have effects on my loan. I would rather a solution out of the courts found, but to protect my almost 20 years of equity interest in my home, I am prepared to present all my undisputable recorded documentation of the many questionable-unlawful actions surrounding my loan all of which the Alaska court will find to be favorable upon me and my stated claims of undeniable recorded facts. Notice to the agent is notice to the principal, and notice to the principal is a notice to the agent.

I implore you to reach out to the lender with my concerns, reevaluate my loan and the recent modification offered, return to the table with some very reasonable terms around the mortgage, and note to keep from burdening a system that frowns upon its time being taken up by persons that make claims of standing without the correctly recorded documentation consisting of proper assignments issued by individuals with the authority to assign, and based on the laws of contract, banking, Lending, mortgages, promissory notes, mortgage servicing, the UCC, and others of the time of its inception.

Sincerely

Timothy-Leo: Bradley  beneficiary
9010 Gee Street
Juneau, Alaska

Below, for your review and to be considered, along with the attachment or case text of cases that runs parallel to the situation at hand

while the assignment of a promissory note also effectuates assignments of the mortgage the converse is not true since a mortgage is merely security for a debt it cannot exist independently of the debt and thus a transfer or assignment of only the mortgage without the debt is a nullity and no interest is acquired by it (see Deutsche Bank National Trust Company vs. Barnett 88 ad 3D 636 Bank of New York vs Silverberg 86 ad 3D at 280,)

**Alaska Statute 09.10.230 provides:**

In an action upon a new promise, fraud, or mistake, the running of the time within which an action may be commenced starts from the making of the new promise or the discovery of the fraud or mistake. This section does not bar an equitable owner in possession of real property from defending possession by means of the equitable title. The right of an equitable owner to defend possession in an action or by complaint for injunction is not barred by lapse of time while an action for the possession of the real property is not barred by the provisions of this chapter.

The law of fraud has changed in the last one hundred years. Today, under Alaska law, a victim's negligence in trusting a misrepresentation will not deprive the victim of his remedy. We do not feel compelled to adopt an interpretation espoused in an 1887 Oregon case decided when such negligence was a defense.

The growing trend and tendency of the courts will continue to move toward the

doctrine that negligence in trusting in a misrepresentation will not excuse positive willful fraud or deprive the defrauded person of his remedy.

**Alaska Statutes Title 6. Banks and Financial Institutions § 06.60.905. Untrue, misleading, or false statements**

A person may not, in a document filed with the department or in an examination, an investigation, a hearing, or another proceeding under this chapter, make or cause to be made an untrue statement of a material fact, or omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading or false.

**Alaska Unfair Trade Practices and Consumer Protection Act.**

Causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services

§ 09.70.030. Good faith
The parties to every contract have a duty to act fairly and in good faith in the performance and enforcement of the contract.

Title 40. Public Records and Recorders § 40.17.090. Conveyances and recorded documents as evidence
40.17.090. Conveyances and recorded documents as evidence
(b) An acknowledged and recorded signed document relating to title to real property creates presumptions with respect to title that
(1) the document is genuine and was executed as the voluntary act of the person purporting to execute it;

(2) the person executing the document and the person on whose behalf it is executed are the persons they are purported to be and the person executing it was neither incompetent nor a minor at any relevant time;

(3) delivery of the document occurred notwithstanding a lapse of time between dates on the document and the date of recording;

(5) the grantee, transferee, or beneficiary of an interest created or claimed by the document acted in good faith at all relevant times up to and including the time of the recording;

(6) a person purporting to act as an agent, attorney-in-fact under a recorded power of attorney or authority, officer of an organization, or in a fiduciary or official capacity, held the position the person purported to hold, acted within the scope of the person's authority, and in the case of an organization, the authorization satisfied all requirements of law; and in the case of an agent, acted for a principal who was neither incompetent nor a minor at any relevant time and who had not revoked the agency;

**AS 36.30.687. Misrepresentations, Fraud, and Attempted Fraud.**
(a) A person who makes or uses in support of a contract claim under this chapter, a misrepresentation, or who practices or attempts to practice a fraud, at any stage of proceedings relating to a procurement or contract claim under this chapter

(1) forfeits all claims relating to that procurement or contract; and

(2) is liable to the state for reimbursement of all sums paid on the claim, for all costs attributable to review of the claim, and for a civil penalty equal to the amount by which the claim is misrepresented.

(b) The procurement officer, commissioner or court shall make specific findings of misrepresentation, attempted fraud, or fraud before declaring a forfeiture under (a)(1) of this section.

(c) Suits to recover costs and penalties under (a)(2) of this section must be commenced within six years after the discovery of the misrepresentation, fraud, or attempted fraud.

(d) A person who in a matter relating to a procurement or a contract claim under this chapter makes a misrepresentation to the state through a trick, scheme, or device is guilty of a class C felony.

(e) In this section, "misrepresentation" means a false or misleading statement of material fact, or conduct intended to deceive or mislead concerning material fact, whether it succeeds in deceiving or misleading.

**Alaska Statutes Title 44. State Government § 44.50.165. Validity of notarial acts**

The failure of a notarial officer to perform a duty or meet a requirement specified in this chapter does not invalidate a notarial act performed by the notarial officer. The validity of a notarial act under this chapter does not prevent an aggrieved person from seeking to invalidate the record or transaction that is the subject of the notarial act or from seeking other remedies based on a law of this state other than this chapter or a law of

the United States. This section does not validate a purported notarial act performed by an individual who does not have the authority to perform a notarial act.

[Quoted text hidden]

**Dismissed-Cases.pdf**
480K

